# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

* * *

Darryl Cox,

Plaintiff,

v.

Cresco Capital, Inc.; et al.,

Defendants.

Case No. 2:25-cv-02022-CDS-DJA

**Order**

Under 28 U.S.C. § 1915 Plaintiff is proceeding in this action *pro se* and has requested authority to proceed *in forma pauperis*. (ECF No. 5). Plaintiff also submitted a complaint (ECF No. 1-1) and two amended complaints (ECF Nos. 6, 7). Because the Court finds that Plaintiff's application is complete, it grants the application to proceed *in forma pauperis.* The Court screens Plaintiff's most recent amended complaint (ECF No. 7) because amended complaints supersede originals.[1] However, because the Court finds that Plaintiff's amended complaint does not properly assert sufficient facts, it dismisses the amended complaint with leave to amend.

## I.     *In forma pauperis* application.

Plaintiff filed the affidavit required by § 1915(a). (ECF No. 5). Plaintiff has shown an inability to prepay fees and costs or give security for them. Accordingly, the request to proceed *in forma pauperis* will be granted under 28 U.S.C. § 1915(a). The Court will now review Plaintiff's complaint.

## II.    Legal standard for screening.

Upon granting an application to proceed *in forma pauperis*, courts additionally screen the complaint under § 1915(e). Federal courts are given the authority to dismiss a case if the action is

---

[1] "It is well established in our circuit that an amended complaint supersedes the original, the latter being treated thereafter as non-existent." *Ramirez v. County of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015).

legally "frivolous or malicious," fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2).  When a court dismisses a complaint under § 1915, the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment.  *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint for failure to state a claim upon which relief can be granted.  Review under Rule 12(b)(6) is essentially a ruling on a question of law.  *See Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 723 (9th Cir. 2000).  A properly pled complaint must provide a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Although Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  The court must accept as true all well-pled factual allegations contained in the complaint, but the same requirement does not apply to legal conclusions.  *Iqbal*, 556 U.S. at 679.  Mere recitals of the elements of a cause of action, supported only by conclusory allegations, do not suffice.  *Id.* at 678.  Where the claims in the complaint have not crossed the line from conceivable to plausible, the complaint should be dismissed.  *Twombly*, 550 U.S. at 570.  Allegations of a *pro se* complaint are held to less stringent standards than formal pleadings drafted by lawyers.  *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (finding that liberal construction of *pro se* pleadings is required after *Twombly* and *Iqbal*).

Federal courts are courts of limited jurisdiction and possess only that power authorized by the Constitution and statute.  *See Rasul v. Bush*, 542 U.S. 466, 489 (2004).  Under 28 U.S.C. § 1331, federal courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  Cases "arise under" federal law either when federal law creates the cause of action or where the vindication of a right under state law necessarily turns on the construction of federal law.  *Republican Party of Guam v. Gutierrez*, 277

F.3d 1086, 1088-89 (9th Cir. 2002). Whether federal-question jurisdiction exists is based on the "well-pleaded complaint rule," which provides that "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). Under 28 U.S.C. § 1332(a), federal district courts have original jurisdiction over civil actions in diversity cases "where the matter in controversy exceeds the sum or value of $75,000" and where the matter is between "citizens of different states." Generally speaking, diversity jurisdiction exists only where there is "complete diversity" among the parties; each of the plaintiffs must be a citizen of a different state than each of the defendants. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

## III.    Screening the complaint.

Plaintiff sues Cresco Capital, Inc., a Minnesota corporation; Lone Mountain Trucking Leasing, LLC, a Nevada limited liability company; Red Rock Capital, LLC, (Plaintiff does not list its citizenship); Wayne Hoovestol an individual; and Joe Hoovestol, an individual. Plaintiff sues Defendants for violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, conversion, breach of the covenant of good faith and fair dealing, and "fraud on the court/abuse of process." Plaintiff alleges that Defendants operate a racketeering enterprise disguised as a commercial truck leasing business. Plaintiff states that Cresco is the "bank" of the operation; Lone Mountain is the "face"; Red Rock conducts "unauthorized financial transactions" and "churn[s]" accounts; that Wayne is the founder, owner, and president of the corporate Defendants, the director of the enterprise, and its beneficiary; and that Joe is the general manager and principal officer of the corporate defendants who is responsible for the day to day execution of the scheme and the "enforcement of seizure policies." Plaintiff claims that Defendants lure truck drivers like Plaintiff with "'lease-to-own' agreements, accept significant equity payments, manufacture fraudulent pretexts to declare default, illegally seize the trucks, retain all equity, and 'recycle' the assets to new victims via their online portal, *AlmostFreeTrucks.com*."[2]

---

[2] Plaintiff references *Joseph Michael Ancona v. Cresco Capital, Inc.*, No. EQCV120708 (Iowa), which he refers to as "The 'Ancona' Precedent," claiming that the jury in that case "returned a verdict against Defendant Cresco Capital, Inc. in the amount of **$250,000.00** for identical

Plaintiff alleges that on October 9, 2023, he entered into a lease agreement with OTR Leasing, LLC for a 2020 Peterbilt 579 commercial freight vehicle. Plaintiff claims that on April 9, 2025, the lessor admitted in writing via email that Plaintiff was "current on the lease." On June 10, 2025, Cresco acquired the lease. Plaintiff asserts that Defendants (who he collectively refers to as the "Enterprise") induced him to modify the terms of the lease by removing the warranty/maintenance package, resulting in a weekly payment of $610.06.

Between June of 2025 and August of 2025, Plaintiff alleges that Defendants used the interstate banking wires to attempt unauthorized ACH (presumably, Automated Clearing House) debits from Plaintiff's bank account under the name of Red Rock, an entity with which Plaintiff had no contract. Plaintiff titles these "Predicate Acts 1-3." Plaintiff asserts that these were attempted thefts designed to trigger NSF (presumably, Non-Sufficient Funds) fees, drain Plaintiff's operating capital, and "manufacture financial distress to justify seizure." But Plaintiff claims that despite the harassment, he made substantial payments on July 16, 2025, of $2,312.71; July 28, 2025, of $630.00; and August 1, 2025, of $635.00; totaling $3,577.71. But immediately following his August 1st payment, Defendants froze Plaintiff's access to the payment portal, which prevented him from making further payments.

On August 7, 2025, Defendants seized Plaintiff's commercial freight vehicle "without a court order and in breach of the peace, in violation of NRS 104.9609.[3]" That same day, about an hour after Defendants seized the vehicle, they sent an email (presumably to Plaintiff) "terminating" the lease and demanding return of the vehicle. Plaintiff titles this email "Predicate

---

conduct." (ECF No. 7 at 2) (emphasis in original). However, while the Court can take judicial notice of another court's docket, it may not do so for the truth of the facts recited in the documents filed on that docket. *See Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) ("[o]n a Rule 12(b)(6) motion to dismiss, when a court takes judicial notice of another court's opinion, it may do so not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity") (internal quotations omitted) *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

[3] This statute governs a secured party's right to take possession or dispose of collateral after default.

Act 4." Plaintiff asserts that Defendants did this to create a paper trail and conceal the fact that they had already seized the vehicle.

Plaintiff then initiated *Darryl Cox v. Cresco Capital, Inc.*, No. A-25-925209-C (8th Jud. Dist.) in the Clark County Eighth Judicial District Court on August 8, 2025. Plaintiff claims that on August 21, 2025, Defendants filed a motion to dismiss which attached a "fraudulent ledger" that omitted the $3,577.71 in payments Plaintiff had made. Plaintiff asserts that this was intended to portray him as being in default. Plaintiff titles the motion to dismiss "Predicate Act 5." Then on September 23, 2025, Defendants filed an opposition "reaffirming the false ledger." Plaintiff titles this opposition "Predicate Act 6." Plaintiff adds that throughout the state court filings, Defendants listed themselves as "Cresco Capital, Inc., d/b/a Lone Mountain Trucking Leasing," to conceal the fact that Lone Mountain was a separate and distinct Nevada entity. Plaintiff titles this naming convention "Predicate Act 7." Plaintiff asserts that this was intended to mislead the Court into believing that Defendants were entirely foreign entities and therefore, to manufacture a grounds for dismissal based on a Kansas forum selection clause. Plaintiff claims that "when challenged," (presumably by Plaintiff in a state court filing), Defendants "agued the existence of the Nevada entity was 'immaterial,' confirming their Alter Ego status."

Plaintiff brings a cause of action for civil RICO under 18 U.S.C. § 1962(c) against Wayne and Joe Hoovestol; for conspiracy to violate RICO under 18 U.S.C. § 1962(d) against all Defendants; for conversion against all Defendants; and for fraud upon the court/abuse of process against all Defendants. Plaintiff seeks damages, punitive damages, declaratory relief, and injunctive relief.

### A.    Substantive RICO claim.

Plaintiff brings his first RICO claim against Wayne and Joe Hoovestol alone, alleging that they violated 18 U.S.C. § 1962(c) by "conduct[ing] the affairs of the 'Enterprise' through a pattern of racketeering activity." Plaintiff asserts that the pattern consists of wire fraud, bank fraud, and interstate transportation of stolen property. But Plaintiff's complaint does not contain enough factual detail to support his substantive RICO claim.

The federal RICO Act "prohibits a person employed by or associated with any enterprise engaged in interstate commerce to conduct or participate in the conduct of the enterprise through a pattern of racketeering activity." *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1147 (9th Cir. 2008) (citing 18 U.S.C. § 1962(c)).  The Act provides a private right of action and civil remedies to redress violations.  *See* 18 U.S.C. § 1964(c) (authorizing a civil action by "[a]ny person injured in his business or property by reason of a violation of section 1962").  In order to state a civil RICO claim under § 1964(c), a plaintiff must sufficiently allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) causing injury to plaintiffs' business or property."  *Ove v. Gwinn*, 264 F.3d 817, 825 (9th Cir. 2001) (quotations omitted).

Here, Plaintiff's complaint fails to state a valid RICO claim because he does not establish the existence of an enterprise or racketeering activity.  Regarding the enterprise element, Plaintiff has failed to allege facts in support of his allegation that Defendants constituted an enterprise.  An "enterprise" is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  Plaintiff's allegations that Defendants formed an enterprise and that the Hoovestols conducted that enterprise are entirely conclusory.  Although Plaintiff alleges each position he believes each Defendant held in the enterprise, his allegations are vague.  Plaintiff does not explain why he believes Defendants were working together or held their respective positions in the enterprise.  And he fails to describe any actions that the Hoovestols took in relation to the enterprise at all.  Indeed, through most of his complaint, Plaintiff refers to the Defendants collectively rather than describing which entity or person took which actions.  So, Plaintiff has not plausibly alleged that Defendants formed an enterprise.

Regarding racketeering activity, Plaintiff has failed to plead wire fraud, bank fraud, or interstate transportation of stolen property—the racketeering activity—with particularity.  The RICO Act specifically includes wire fraud (a violation of 18 U.S.C. § 1343), financial institution fraud (a violation of 18 U.S.C. § 1344), and interstate transportation of stolen property (a violation of 18 U.S.C. § 2314) as "racketeering activity."  *See* 18 U.S.C. § 1961(1)(B).  Because RICO claims involve underlying fraudulent acts, they are subject to Federal Rule of Civil

Procedure 9(b)'s heightened pleading standard. *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065–66 (9th Cir. 2004); *see* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake"). Accordingly, to sufficiently plead their RICO claim, plaintiffs must specify the time, place, and content of the alleged underlying fraudulent acts, as well as the parties involved and their individual participation. *Edwards*, 356 F.3d at 1066; *see also Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989) (racketeering allegations under § 1962(c) must identify the time, place, and manner of each fraud plus the role of each defendant in the scheme).

Here, Plaintiff's allegations are too general to plead wire fraud, bank fraud, or interstate transportation of stolen property with particularity. Plaintiff alleges that Defendants committed at least seven distinct predicate acts of wire fraud. These include: (1-3) Red Rock's debit attempts on Plaintiff's bank account between June 2025 and August 2025; (4) the August 7, 2025, email; (5) the August 21, 2025, motion to dismiss; (6) the September 23, 2025, opposition brief; and (7) Defendants use of the "doing business as" naming convention. While not entirely clear, the Court can infer that Plaintiff categorizes the debit attempts as bank fraud and the repossession of his vehicle as interstate transportation of stolen property.

Plaintiff's allegations about these acts are too conclusory, however. While Plaintiff asserts that Red Rock made "unauthorized" debit attempts, he does not identify the precise dates of these attempts or why they were unauthorized other than stating that he had no contract with Red Rock. While Plaintiff claims that the August 7, 2025, email was an attempt to justify the seizure of his vehicle after the fact, Plaintiff does not explain who sent it or why it was improper for the sender to terminate the lease. Plaintiff also claims that Defendants filed a motion to dismiss in the state court docket on August 21, 2025, that attached a "fraudulent" ledger that omitted his recent payments. But Plaintiff does not explain which Defendant filed the document or why omitting the recent payments made it "fraudulent." The same is true of Plaintiff's allegation that Defendants filed an opposition brief on September 23, 2025, in state court "reaffirming" the ledger. Similarly, it is not clear how Cresco's use of the "doing business as" naming convention in the state court case was misleading or is related to a forum selection clause

in that case. Finally, Plaintiff does not allege that Defendants took his vehicle to another state. Because Plaintiff neither alleges that Defendants formed an enterprise nor alleges his racketeering claims with particularity sufficient to meet Rule 9(b)'s heightened standard, he has not alleged a claim for civil RICO. The Court therefore dismisses this claim without prejudice and with leave to amend

### B.    RICO conspiracy.

18 U.S.C. § 1962(d) also prohibits any conspiracy to violate 18 U.S.C. § 1962(c). There can be no RICO conspiracy claim where there is no adequately pled substantive RICO offense. Moreover, to sustain a claim under § 1962(d) plaintiff must plead facts which show "(1) that two or more people agreed to commit a substantive RICO offense and (2) that the defendant knew of and agreed to the *overall objective* of the RICO offense." *Samuelson v. Jewell School District 8*, 725 F.Supp.3d 1195, 1208 (D. Or. 2024) (quoting *United States v. Rosenthal*, 805 F.3d 523, 530 (5th Cir. 2015)) (emphasis in original). The "key question" in a RICO conspiracy case is whether the defendant "knew about and agreed to facilitate" a scheme that would involve the commission of two predicate acts. *United States v. Fiander*, 547 F.3d 1036, 1041 (9th Cir. 2008) (quotation marks omitted).

As discussed above, Plaintiff has failed to allege facts demonstrating the existence of an enterprise or the commission of any specific acts of wire fraud, bank fraud, or the interstate transmission of stolen goods. The amended complaint also lacks non-conclusory facts demonstrating that the Defendants made an agreement with each other to defraud Plaintiff and knew that their scheme would involve multiple such acts. Plaintiff's belief that this was so cannot substitute for the allegation of specific facts. So, Plaintiff fails to state a claim under 18 U.S.C. § 1962(d).

///

///

///

### C.    Subject matter jurisdiction over Plaintiff's remaining claims.

Plaintiff's remaining claims are state law claims, including conversion,[4] breach of the covenant of good faith and fair dealing,[5] and "fraud on the court/abuse of process."[6]  Under the doctrine of supplemental jurisdiction a federal court may hear state claims that are part of the "same case or controversy" as another claim properly before the Court.  28 U.S.C. § 1367(a).  However, as outlined above, Plaintiff has failed to state a federal RICO claim.  So, the Court lacks federal question jurisdiction, and therefore supplemental jurisdiction, over Plaintiff's remaining state law claims.  *See* 28 U.S.C. § 1331; *see* 28 U.S.C. § 1367(a).  Plaintiff does not invoke the Court's diversity jurisdiction and, even if he did, it is unclear if the Court has diversity jurisdiction over his claims because he claims that Lone Mountain is a citizen of Nevada and it appears from Plaintiff's address that he is too.  28 U.S.C. § 1332.  So, the Court dismisses Plaintiff's state law claims without prejudice as well.

---

[4] Conversion is "a distinct act of dominion wrongfully exerted over another's personal property in denial of, or inconsistent with his title or rights therein *or* in derogation, exclusion, or defiance of such title or rights." *M.C. Multi-Family Development, L.L.C. v. Crestdale Associates, Ltd.*, 193 P.3d 536, 542-43 (Nev. 2008) (internal citations and quotations omitted) (emphasis in original).

[5] The elements of breach of the implied covenant of good faith and fair dealing are: (1) plaintiff and defendant were parties to a contract; (2) defendant owed a duty of good faith to plaintiff; (3) defendant breached that duty by performing in a manner that was unfaithful to the purpose of the contract; and (4) plaintiff's justified expectations were denied. *Perry v. Jordan*, 900 P.2d 335, 338 (Nev. 1995).

[6] Plaintiff claims that Defendants' fraud occurred in the state court and so, the Court construes this as a state law claim.  Nevada has adopted the definition of fraud upon the court as "embrac[ing] only that species of fraud which does, or attempts to, subvert the integrity of the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases…and relief should be denied in the absence of such conduct." *NC-DSH, Inc. v. Garner*, 218 P.3d 852, 858 (Nev. 2009).  In Nevada, a claim for abuse of process must establish "(1) an ulterior purpose by the defendants other than resolving a legal dispute, and (2) a willful act in the use of the legal process not proper in the regular conduct of the proceeding." *Posadas v. City of Reno*, 851 P.2d 438, 444-45 (Nev. 1993).

**IT IS THEREFORE ORDERED** that Plaintiff's application to proceed *in forma pauperis* (ECF No. 5) is **granted.** Plaintiff shall not be required to pre-pay the filing fee. Plaintiff is permitted to maintain this action to conclusion without the necessity of prepayment of any additional fees or costs or the giving of a security therefor. This order granting leave to proceed *in forma pauperis* shall not extend to the issuance and/or service of subpoenas at government expense.

**IT IS FURTHER ORDERED** that the amended complaint (ECF No. 7) is **dismissed without prejudice** for failure to state a claim upon which relief can be granted, with leave to amend. Plaintiff will have until **June 29, 2026,** to file an amended complaint if the noted deficiencies can be corrected. If Plaintiff chooses to amend the complaint, Plaintiff is informed that the Court cannot refer to a prior pleading (i.e., the original complaint) to make the amended complaint complete. This is because, generally, an amended complaint supersedes the original complaint. Local Rule 15-1(a) requires that an amended complaint be complete without reference to any prior pleading. Once a plaintiff files an amended complaint, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each Defendant must be sufficiently alleged. **Failure to comply with this order will result in the recommended dismissal of this case.**

**IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to **send** Plaintiff a copy of this order.

DATED: May 29, 2026,

_____

DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE